Thiago M. Coelho, SBN 324715
thiago@wilshirelawfirm.com
Binyamin I. Manoucheri, SBN 336468
binyamin@wilshirelawfirm.com
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALY MORALES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>K. CHOCOLATIER INC., d/b/a DIANE KRON CHOCOLATIER, a California corporation; and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-08522-ODW-(SHKx)<br><br>CLASS ACTION<br><br>*Hon. Judge Otis D. Wright, II*<br><br>**PLAINTIFF NATALY MORALES' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Date: August 22, 2022<br>Time: 1:30 pm<br>Place: Courtroom 5D, 5th floor<br><br>Complaint filed: October 27, 2021<br>Trial date: April 25, 2023 |

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 22, 2022, at 1:30 p.m., or as soon thereafter as counsel may be heard in the courtroom of the Honorable Otis D. Wright II located in the First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Courtroom 5D, 5th Floor, Plaintiff Nataly Morales will and hereby does move for an order granting class certification in this matter, on the grounds that all the prerequisites of Fed. R. Civ. P. 23, including both Rule 23(b)(2) and Rule 23(b)(3) have been satisfied ("Motion").

On July 19, 2022, Plaintiff's Counsel spoke with Defendant's Counsel telephonically and thereafter sent Defendant an in-depth outline of Plaintiff's arguments as to why class certification is appropriate. Moreover, on July 18, 2022, the Parties also discussed the viability of class certification, including Defendant's argument as to why numerosity is not met. Preceding that, the Parties spoke on or about April-May regarding the viability of class certification, touching in part on Defendant's numerosity arguments. During each of these discussions, Defendant's Counsel adamantly argued that this matter is not appropriate for class certification. Defendant's Counsel also stated that he had reviewed each motion for class certification Plaintiff's Counsel filed for Americans with Disabilities Act class actions.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Binyamin Manoucheri and exhibits thereto, the Declaration of Plaintiff Nataly Morales, the Declaration of Kannan Arumugam, any argument or evidence that may be presented to the Court prior to its ruling, and all other matters of which the Court may take judicial notice.

Dated: July 19, 2022                               Respectfully Submitted,


/s/ *Binyamin I. Manoucheri*
Binyamin I. Manoucheri
**WILSHIRE LAW FIRM, PLC**
*Attorneys for Plaintiff and Proposed Class*

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS....................................................................... i

TABLE OF AUTHORITIES ............................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES........................... 1

I.    INTRODUCTION ....................................................... 1

II.   PERTINENT FACTS.................................................. 3

    A.  Defendant Sells Products in Stores and on Its Website. ........ 3

    B.  Morales and the Class Are Visually Impaired Consumers....... 3

    C.  Defendant Never Coded Its Website to Be ADA Compliant. ........ 4

III.  ARGUMENT............................................................... 7

    A.  This Is a Strong Case for Class Certification........................... 7

       1.   Plaintiff Can Show Numerosity...................................... 7

       2.   Plaintiff Can Show Commonality.................................. 13

       3.   Plaintiff Can Show Typicality ...................................... 15

       4.   Plaintiff Can Show Adequacy ...................................... 16

       5.   Plaintiff Can Show That Class Certification Is Appropriate Under

          Rule 23(b)(3)....................................................... 17

          *a.*   *Plaintiff Can Show Predominance* .................................. 17

          *b.*   *Plaintiff Can Show Superiority* ...................................... 19

       6.   Plaintiff Can Show That Class Certification Is Appropriate

          Under FRCP 23(b)(2) Regarding Injunctive Relief ........................... 20

IV. CONCLUSION ........................................................... 21

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

# TABLE OF AUTHORITIES

**CASES**

*Abdullah v. U.S. Sec. Associates,*
   731 F.3d  952 (9th Cir., 2009) ................................................................. 13

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................... 16, 19

*Celano v. Marriott Intern., Inc.*,
   242 F.R.D. 544 (N.D. Cal. 2007) ............................................................ 8

*Colorado Cross-Disability Coal. v. Taco Bell Corp.*,
   184 F.R.D. 354 (D. Colo. 1999) ...................................................... 14, 16

*Consolidated Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir.1995) ....................................................................... 8

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970, 80 Fed. R. Serv. 3d 832, 94 Empl. Prac. Dec. (CCH) 44282,
   11 Cal. Daily Op. Serv. 11904 (9th Cir. 2011) ................................... 13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ............................................................................ 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................... 13, 15, 16

*Jimenez v. Allstate Ins. Co.,*
   765 F.3d 1161 (9th Cir. 2014) ............................................................ 13

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ........................................................ 19, 20

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D. Cal. 2004) ...................................................... 14, 15

*Robles v. Domino's Pizza, LLC,*
   913 F.3d 898 (9th Cir. 2019) ............................................................... 4

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Rodriguez v. Hayes*,

   591 F.3d 1105 (9th Cir. 2009)....................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,

   564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ............................ 13, 18

*Wang v. Chinese Daily News*,

   737 F.3d 538 (9th Cir.2013)........................................................................... 13

**STATUTES**

29 U.S.C. § 794(d) ........................................................................................... 4

42 U.S.C. § 12182(a)........................................................................................ 17

42 U.S.C. §§ 12181 .......................................................................................... 1

Cal. Civ. Code §§ 51, *et seq.*.......................................................................... 1

**RULES**

Fed. R. Civ. P. 23 ............................................................................................ 2

Fed. R. Civ. P. 23(a) ....................................................................................... 7

Fed. R. Civ. P. 23(a)(1) ................................................................................... 7

Fed. R. Civ. P. 23(a)(2) ................................................................................... 13

Fed. R. Civ. P. 23(a)(3) ................................................................................... 15

Fed. R. Civ. P. 23(b)(2) ................................................................................... 7, 20

Fed. R. Civ. P. 23(b)(3) ................................................................................... 7, 19

**TREATISES**

5 James Wm. Moore et al., Moore's Federal Practice § 23.22

   [1] [b] (3d ed.2004)........................................................................................ 8

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Nataly Morales ("Plaintiff" or "Morales") meets the criteria for class certification of this matter brought against Defendant K. Chocolatier Inc. d/b/a Diane Kron Chocolatier ("Defendant"). Defendant created and knowingly operates https://www.dianekron.com/ (the "Website") through which Defendant ships carefully molded and top-quality chocolates throughout the United States in conjunction with its two brick-and-mortar stores located in Los Angeles County. Morales, who is legally blind and must use screen-readers to access websites, alleges Defendant is in violation of Morales' civil rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*. ("ADA") and the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq*. ("Unruh Act") as a result of Defendant's failure to properly code its Website so that Plaintiff's screen-reader properly reads aloud nonvisual elements of the Website—thereby denying her access to the goods and services of Defendant's brick-and-mortar stores.

Plaintiff seeks certification of two classes: A Nationwide class  defined as "all legally blind individuals who have attempted to access Defendant's website by the use of a screen reading software during the applicable limitations period up to and including final judgment in this action" ("Nationwide Class"); and a California class defined as "all legally blind individuals in the State of California who have attempted to access Defendant's website by the use of a screen reading software during the applicable limitations period up to and including final judgment in this action" ("California Class").

Defendant's intentional actions and omissions greatly impact visually impaired persons such as Morales causing difficulty, discouragement, and frustration. Defendant owes a duty to visually impaired consumers to ensure its Website is ADA compliant because a sufficient nexus exists between its Website and corresponding stores.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

1

The claims in this case more than meet the standards required under Fed. R. Civ. P. ("FRCP") 23. First, numerosity is satisfied. Through discovery, Plaintiff ascertained that Defendant used Squarespace as a web host throughout the class period. *See* Declaration of Binyamin I. Manoucheri ("Manoucheri Decl."), ¶13, Exh. 1 at 207:7-21. Moreover, Plaintiff also obtained Squarespace analytics from Defendant showing that Defendant's Website received 46,500 unique visitors during the entire class period. Manoucheri Decl., ¶14, Exh. 2.  Squarespace provides unique visitor counts to estimate the total number of actual visitors that reached Defendant's Website during a selected time period. *See* Manoucheri Decl., ¶15, Exh. 3. To accomplish this, Squarespace creates a browser cookie which lasts two years from when someone first visits a website. *Id*. Thus, unique visitors is a good measure of Defendant's loyal audience and readership. *Id*. Plaintiff employs census data and statistical evidence in conjunction with Defendant's unique visitor data to satisfactorily show that the number of visually impaired persons who visited Defendant's website during the class period with screen-readers exceeds forty persons.

Moreover, Plaintiff's claims are typical of the class—Morales and the Class Members were unable to use the Website with screen-readers denying them the goods and services of Defendant's stores. The issues presented are all common questions of fact and law: the use of the Website was frustrated by Defendant's coding failures creating violations of the ADA and Unruh Act in the same ways. Defendant's failure to properly code the Website so that Plaintiff's and Class Members' screen-readers read aloud nonvisual elements of the Website, as a result of having no knowledge that Defendant's Website is subject to the ADA, *Id*., Exh. 1 at 195:1-8, ensured that Morales' claims are typical of the classes and that the issues presented are common questions of fact and law. This, in conjunction with the fact that Defendant never made updates to the Website since the Website's creation besides for adding alternative text to some of the images on the Website through Squarespace after receiving notice of the litigation, *Id*., at Exh. 1 at 183:1-24, 187:21-25; 188:1, ensured that Plaintiff and

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Class Members each encountered a similar, if not identical, deficiently coded website. Hearings on separate cases would create numerous potentially conflicting decisions. The same claims predominate, and the use of the class procedure is superior to hearing individual claims.

Finally, Morales seeks appropriate injunctive relief that is readily available and known to Defendant. Despite knowing of accessibility problems on its Website since the inception of this matter and possessing the ability to achieve the technical expertise to fix them, Defendant has chosen not to do so. Proper coding which complies with the accessibility standards is well known in the internet e-commerce community and is specifically available to Defendant using Squarespace's guidelines. *See* Manoucheri Decl. at Exh. 4. Injunctive relief will benefit thousands of Defendant's customers and Class Members.

In sum, Morales has provided sufficient evidence to grant class certification and requests that the Court allow the case to proceed through certification, post-class discovery, pleadings and trial using judicial economy and consistency.

## II.   PERTINENT FACTS

### A. Defendant Sells Products in Stores and on Its Website.

Defendant is a chocolatier company that sells and delivers chocolates that it offers both in-store and through the Website. *See* Manoucheri Decl., ¶7. Defendant operated the Website throughout the class period. *Id*., ¶8. Defendant failed to code its Website to be accessible to visually impaired users of screen-readers throughout the class period.

### B. Morales and the Class Are Visually Impaired Consumers.

Plaintiff is a legally blind person who uses screen-reading software to experience the internet. Manoucheri Decl., ¶10; *see also* Declaration of Nataly Morales ("Morales Decl."), ¶2. Plaintiff and visually impaired persons use screen-reading software to browse and shop on the internet. *Id*. Screen-reading software reads aloud both textual and visual elements on websites. This popular and readily available

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

software enables visually impaired persons to navigate the Website through auditory cues. It is widely used by millions of Americans nationwide.

Morales first attempted to access the Website in October 2021. Morales Decl., ¶3. Morales also attempted to access the Website several more times after October 2021 but was unable to navigate the Website due to the barriers therein. *Id.*, ¶3.

Morales also contends that her experience was not unique. Any visually impaired person who attempted to access the website during the class period with a screen-reader would have encountered Defendant's deficiently coded Website.

C. **Defendant Never Coded Its Website to Be ADA Compliant.**

In order for screen-reading software to assist a visually impaired person access a website, it must be able to vocalize or "read aloud" visual elements of that website. Various simple-to-add features must be included within the website's code, such as alternative text, or alt-text, which describe the non-word images with sufficient clarity. Manoucheri Decl., ¶10; Declaration of Kannan Arumugam ("Arumugam Decl."), ¶¶1-4. Widely accepted industry standards for ADA digital accessibility include the W3C Accessibility Guidelines, WCAG 2.1 A, AA, AAA and the standards of Section 508 of the Rehabilitation Act, 29 U.S.C. § 794(d). *See* Arumugam Decl., ¶¶1, 3; *see also Robles v. Domino's Pizza, LLC,* 913 F.3d 898, 902 n.1 (9th Cir. 2019) (Finding that "WCAG 2.0 guidelines have been widely adopted, including by federal agencies, which conform their public-facing, electronic content to WCAG 2.0 Level A and Level AA Success Criteria", and that the Department of Justice has required ADA-covered entities to comply with WCAG 2.0 Level AA in many consent decrees and settlement agreements in which the United State has been a party).

Morales and *putative* Class Members were unable to use the Website because it does not work with screen-reading software such as that used by Morales. Defendant failed to hire any person to ensure that the Website was or is ADA compliant, whether at the outset of the Website's creation or thereafter. *See* Manoucheri Decl., Exh. 1 at 47:3-13. Moreover, Defendant's Person Most Knowledgeable, David Kron, testified

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

4

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

that Defendant never hired any third-party consultants who specialize in ADA work to remediate the Website. *See* Manoucheri Decl., Exh. 1 at 47:14-17. One of Mr. Kron's jobs is to maintain the Website and he did, in fact, make changes to the website regarding pricing and product descriptions through his Squarespace login. Mr. Kron testified that he is not trained in coding practices, does not know how to code pursuant to WCAG, and has no understanding of what the requirements of the ADA, despite being required to make the Website ADA compliant. *Id*. at 47:18-25; 48:1-6. In fact, the first time that Mr. Kron heard that Websites can be subject to the requirements of the ADA was upon reading the Complaint of the instant action. *Id*. at 38:7-16. Defendant admitted that it relied solely on Squarespace to ensure that its website is compatible with screen-reading software. *Id*. at 54:23-25; 55:1.

Squarespace, however, maintains that Squarespace users are responsible for ensuring that their websites comply with applicable laws, and Squarespace recommends consulting an accessibility specialist. *See* Manoucheri Decl. at Exh. 4. In fact, Squarespace states in its FAQ section that "You're responsible for ensuring your site complies with applicable laws, including local accessibility requirements." *Id*. at Exh. 4, p. 4. Moreover, Squarespace also represents that Squarespace Customer Support cannot provide any advice to Squarespace users about making their websites compliant with any specific accessibility laws, regulation, or standards. *Id*. at Exh. 4, p. 1. Defendant's reliance on Squarespace to make the Website ADA compliant was misguided, at best, as Squarespace specifically puts the onus on the owners of the websites to make them compliant. *Id*.  Defendant admitted that its own person most knowledgeable could not code, though making a website ADA compliant takes proactive coding work, (Manoucheri Decl. ¶10).  As such, Defendant's Website was never ADA compliant and Defendant made to attempt to make it compliant, including to date. Thus, each of the Class Members encountered a deficiently coded website that did not work with their screen-readers regardless of when the Website was accessed or what screen-reader or browser was used. Arumugam Decl., ¶4.

Plaintiff's expert, Kannan Arumugam, is an Americans with Disabilities Act consultant with over fifteen years of experience in website accessibility. Arumugam Decl., ¶¶1-2. He has expertise in numerous programming languages, conducted numerous website audits, attended specialized trainings and seminars and is a panel member of the International Association of Accessibility Professionals who provide ADA certifications. Manoucheri Decl. at Exh 5. From 2014 through 2019 he was also a Senior Web Accessibility Consultant for Bank of America performing the type of analysis discussed here. *Id*.

On July 19, 2022, Mr. Arumugam carefully evaluated Defendant's website. His analysis demonstrates that Defendant's Website included numerous serious barriers throughout the class period including but not limited to the following:

(1) Multiple buttons that lack accessible names and, thus, prevent legally blind users from understanding the purpose and structure of the page;

(2) A page that lacks Heading Level one <h1> element, and, thus prevents legally blind users from understanding the purpose and structure of the page;

(3) Error Message which are not communicated after form submission, preventing legally blind users from ascertaining the error messages' content; and

(4) Menu content text which is presented as a single image with confusing alt text, thus preventing legally blind users from understanding the purpose of the image and the menu content.

Arumugam Decl., ¶ 3.

Mr. Arumugam's report demonstrates how Defendant launched inaccessible webpages. As the operative Complaint in this matter identifies barriers to the subject Website and Mr. Arumugam's report reflects that some of these barriers persist several months into litigation, these facts show pervasive, on-going and repeating accessibility problems throughout the class period.

6

## III.    ARGUMENT

### A. This Is a Strong Case for Class Certification.

Morales seeks to certify a Nationwide class and a California Class.

To certify the classes, Plaintiff must satisfy the four prerequisites enumerated in FRCP 23(a), as well as at least one of the requirements of FRCP 23(b). Plaintiff submits that she has satisfied FRCP 23(a) and both FRCP 23(b)(2) and FRCP 23(b)(3). Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (*i.e.*, numerosity); (2) that there are one or more questions of law or fact common to the class (*i.e.*, commonality); (3) that the named parties' claims are typical of the class (*i.e.*, typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (*i.e.*, adequacy of representation). Fed. R. Civ. P. 23(a).

FRCP 23(b)(2) permits class actions for declaratory or injunctive relief where the party opposing the class "has acted or refused to act on grounds generally applicable to the class." Fed. R. Civ. P. 23(b)(2). FRCP 23(b)(3) requires a finding that both (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," (*i.e.*, predominance), and (2) "a class action is superior to other methods for fairly and efficiently adjudicating the controversy," (*i.e.*, superiority) including the following considerations: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against the class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

### 1.    Plaintiff Can Show Numerosity

Under FRCP 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As a general rule, a class of

over 40 individuals satisfies this prerequisite. *See* 5 Wm. Moore et al., Moore's Federal Practice § 23.22 [1] [b] (3d ed.2004). Notably, courts have held that 40 members in a class in all cases satisfies numerosity. *See, e.g., Celano v. Marriott Intern., Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer.") (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995)). Accordingly, Plaintiff will establish that the proposed class includes hundreds of members, based on evidence obtained in discovery, verifiable statistics, and a little math.

First, filed concurrently herewith, Plaintiff has provided a declaration demonstrating problems personally experienced and typical of barriers experienced by visually impaired consumers who may have attempted to utilize Defendant Website during the relevant class period. The class period is from October 27, 2018 to present. Hence, Plaintiff will establish numerosity by showing the high likelihood that at least 39 additional class members have valid claims within the relevant class period, and that joinder is impracticable.

Plaintiff estimates Defendant's website had 46,500 unique visitors during the class period. During the course of discovery Defendant produced records indicating that approximately 54,000 separate potential consumers visited Defendant's Website between 2018 and 2022, which is ten months longer than the class period. Manoucheri Decl. Exh. 2. Specifically, the Website had 9,000 unique visitors in 2018, 11,000 unique visitors in 2019, 18,000 unique visitors in 2020, and 16,000 unique visitors in 2021. *Id*. However, the 9,000 unique visitors in 2018 is for a period beginning January 1, 2018 to December 31, 2018, and the class period begins October 27, 2018. To account for this Plaintiff divides the 9,000 unique visitors by twelve months to get an average of unique visitors for 2018, to get 750 averaged unique visitors per month. Multiplying 750 by two (to only

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

8

account for the months of November and December) results in 1,500 unique visitors for November and December of 2018.   As such,  Plaintiff estimates Defendant's website had 46,500 unique visitors during the class period.

However, of this unique visitor pool of 46,500, a smaller percentage of these visitors are also legally blind and, thus, a viable class member. Pursuant to Disability Statistics,[1] in 2019 "an estimated 2.3 percent (plus or minus 0.02 percentage points) of non-institutionalized, male or female, all ages, all races, regardless of ethnicity, with all education levels in the United States reported a visual disability."[2]   In other words, 7,498,000 out of 324,371,500 non-institutionalized persons in the United States reported as blind or having serious difficulty seeing even when wearing glasses. *Id*. Likewise, in 2019 an estimated 1.9 percent of non-institutionalized persons in the State of California reported a visual disability. *Id*. In other words, 747,300 out of a base population of 39,149,700 non-institutionalized Californians reported as blind or having serious difficulty even when wearing glasses.  *Id*.

Appropriately, it is reasonable to postulate that 2.3% of the 46,500-person pool are visually disabled, when viewing from a nationwide lens. Similarly, 1.9% of 46,500 would represent the approximate size of the California class. Based on the foregoing, 2.3% of the 46,500 represents a potential nationwide class size of 1,069 persons, while the California class could consist of approximately 883 persons.

However, to be exceedingly fair with this calculation, the potential class sizes are further reduced by limiting the pool(s) to only those visually impaired class members with the likelihood of actually utilizing screen-reading software. According to some surveys, at least 64.2% of blind people use a screen reader

---

[1] Disability Statistics is an online resource for disability statistics within the United States that has been advanced by Cornell University.
[2] https://www.disabilitystatistics.org/reports/acs.cfm?statistic=1

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

software.[3] 64.2% of 1,069 is 686. Thus, there are approximately 686 persons that represent a nationwide class against Defendant based on the allegations of the operative complaint. Relying on this same formula, Plaintiff calculates that the California class consists of approximately 566 persons. Even if only 10% of these potential class members submit a valid claim, that would well exceed the 40-person threshold generally recognized by Courts when analyzing numerosity.

In *Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1199 (N.D. Cal. 2007), a nearly identical case alleging that target's website violated the ADA and the Unruh Act, in granting certification, the court found that nearly identical evidence supported numerosity, reasoning as follows:

> Plaintiffs have submitted evidence, based on U.S. Census data, that there are likely thousands of potential class members in the nationwide class based on the large number of people who are legally blind and use screen access software. See Brome Dec. ¶ 4. Similarly, they estimate that there are approximately 140,000 blind individuals in California. *Id*. They further contend that 10,000 blind people in California use screen access software to access the internet. Taylor Dec. ¶ 4. Target responds that plaintiffs have not met their burden on this element: they have not presented any evidence of the number of blind individuals who use the internet and more specifically those who have attempted to access Target.com. However, defendant seeks to impose a level of specificity not required by Rule 23(a). Courts, including this one, have repeatedly certified ADA classes like the one proposed here based on similar evidentiary showings. In *Lieber v. Macy's Cal., Inc., No. C 96–2955* MHP, Order re: Class Certification, at 5 (N.D.Cal. Mar. 9, 1998), this court found the numerosity

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[3] https://webaim.org/projects/screenreadersurvey7/

requirement satisfied based on census data and statistical evidence indicating that there were thousands of wheelchair users and persons with other mobility disabilities living in the Bay Area. In that action, like the present one, the class definition included persons with certain specific mobility disabilities who had been denied access to one of defendants' stores. Id. The court required no evidence that a sufficiently numerous subset of mobility impaired persons had been denied access to the stores, because no such evidence was required by the dictates of Rule 23. Indeed, in cases, like those involving alleged violations of the ADA, where the alleged violations may have deterred putative class members from attempting to access stores, the type of evidence defendant seeks may be unavailable, if not impossible, to obtain. The court in *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D.Cal.1994) (Henderson, J.) similarly concluded that estimates of the likely number of disabled persons affected by access barriers in seventy of the defendant's theaters was sufficient to establish numerosity.

*Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1199–200 (N.D. Cal. 2007).

Here, Plaintiff has clearly shown that the class exceeds the number at which joinder becomes impracticable. According to Plaintiff's evidence many individuals use screen-reading software simply within the State of California, indicating that the number of those persons who have visited Defendant's website exceeds forty. Numerosity has clearly been shown. *See Id*. at 200 ("Like the data in *Arnold*, the statistics presented by plaintiffs establish that many blind people currently shop at Target and that the type of activity, shopping at a Target store, is sufficiently 'widespread', 'numerous' and 'readily available' that the use of statistics regarding the number of blind shoppers at Target is not 'rank speculation untethered to real

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

11

facts.'") (internal citation omitted).

Fortunately, Plaintiff's claim for numerosity does not rely solely on the premise that the proposed class includes hundreds of members, but also that joinder of the claims for the proposed class(es) remains impracticable. While "impracticable" does not mean "impossible," a class representative must show "that it is extremely difficult or inconvenient to join all the members of the class." 7A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1762 (3d ed.). "The key numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). Answering that question requires evaluation of "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." WRIGHT & MILLER, *supra*, at § 1762. Here, the nature of this ADA action centers on access barriers found on Defendant's website for legally blind persons, who can access Defendant's website from anywhere in the world. Joinder is impracticable because (1) the proposed class includes hundreds of members, (2) the discovery provided by Defendant does not establish the location of the unique visitors to the subject website, thus the current location of each potential class member is presently unknown and, as it is unlikely that they all live in the same judicial district, the likelihood that Plaintiff expends prohibitive costs and effort is greatly increased, and (3) while each potential class member would have encountered a barrier similar, if not identical, to those identified in the operative Complaint, or described by Plaintiff's expert, the specific type of barrier(s) or the location of the barrier(s) on any of the pages within Defendant's website, may vary, thereby making it extremely difficult and inconvenient to address each of the barriers at issue, separately for each class member, when the class size consists of hundreds of persons.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

Accordingly, there is a high likelihood that a potential nationwide class, as well as a California class, consist of more than 40 persons, each, and that joinder of their claims are impracticable. Thus, numerosity is satisfied.

### 2. Plaintiff Can Show Commonality

To meet commonality, the Plaintiff must show that there are questions of law or fact common to the class as a whole. Fed. R. Civ. P. 23(a)(2). The class claims "must depend upon a common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "These common questions may center on 'shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies.'" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). "This analysis does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class's claims." *Id*.

"This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single *significant* question of law or fact." *Abdullah v. U.S. Sec. Associates,* 731 F.3d 952, 957 (9th Cir., 2009) (internal quotation omitted) (emphasis in original). "The requirements of Rule 23(a)(2) have been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (internal quotation omitted); *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir.2013) ("Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of class wide resolution.")

Notably, the Ninth Circuit has held that commonality does "not require complete congruence." *In re First All. Mortg. Co.*, 471 F.3d 977, 990 (9th Cir.

13

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

2006). In *Nat'l Fed'n of Blind*, 582 F. Supp. 2d at 1201, the court, addressing an almost identical issue, found that commonality was met, holding that "plaintiffs have demonstrated to the court that there are common issues of fact and theories of law as to accessibility of the Target.com website." Similarly, in physical access cases, courts routinely hold that commonality is met where physical barriers at a restaurant are encountered by different class members. *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 609 (N.D. Cal. 2004) ("A number of courts have held that where people who use wheelchairs encounter the same types of barriers at a number of commonly-owned or affiliated public accommodations, commonality is established and class certification is appropriate"); *see also Colorado Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 359 (D. Colo. 1999) ("Where a categories of design features are being challenged in each theater, it follows that the legality of those features are legal issues common to the claims of the members of all of the subclasses.")

Commonality is met here because Plaintiff, like the plaintiffs in *Arnold*, brings challenges to common design features of Defendant's website on the basis of "common distinguishing characteristics shares by all the class member," in this case, their status as blind or visually impaired individuals. 158 F.R.D. at 452. The common questions of law presented here include whether Defendant's Website has a sufficient nexus to Defendant's brick-and-mortar stores to subject the Website to the requirements of the ADA, and whether Defendant's Website satisfies its obligations under the ADA. The questions of fact common to all Class Members include whether the Website works for visually impaired screen-reader users.

Commonality is met here because these class wide issues dominate the litigation. Each of these issues turns on a single class wide question which can be answered on a class wide basis. In particular, the issue of whether Defendant's Website works with screen-reading software is central to this case. It will be answered by expert testimony as to how the Website interacts with screen-reading

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

14

1    software and answered in one fell swoop on behalf of all Class Members.

2        **3. Plaintiff Can Show Typicality**

3         FRCP 23(a)(3) requires the putative class representatives to have claims or

4    defenses that are "typical of the claims or defenses of the class." The typicality

5    requirement "is satisfied when each class member's claim arises from the same

6    course of events, and each class member makes similar legal arguments to prove

7    the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009)

8    (quotation marks and citation omitted). This "permissive" standard requires only

9    that the representative's claims are "reasonably co-extensive with those of absent

10   class members; they need not be substantially identical." *Hanlon, supra,* 150 F.3d

11   at 1020.

12       In the context of Title III ADA cases alleging discrimination based on

13   physical barriers, typicality is routinely met where the named plaintiffs are

14   disabled and encountered the same barriers that the class members challenge. *See,*

15   *e.g., Arnold*, *supra* 158 F.R.D. at 450 ("Indeed, in a public accommodations suit

16   such as this one where disabled persons challenge the legal permissibility of

17   architectural design features, the interests, injuries, and claims of the class

18   members are, in truth, identical such that any class member could satisfy the

19   typicality requirement for class representation."). As the court explained in

20   *Moeller*:

21          The named plaintiffs here, like members of the proposed class, all use

22          wheelchairs or scooters for mobility and have encountered allegedly

23          discriminatory barriers and policies at Defendant's restaurants. The

24          effect of these alleged barriers and policies is the same for the named

25          plaintiffs as for the class. The named plaintiffs challenge these barriers

26          under the same statutes and remedial theories as the class. Therefore,

27          their claims satisfy the typicality requirement of Rule 23(a)(3).

28   220 F.R.D. at 611; *see also Access Now*, *supra,* 197 F.R.D. at 528 ("In this case,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

15

the representative Plaintiffs have the same interests and suffer the same injuries as the class members in that they are allegedly denied access to the same facilities as the class members and discriminated against as the result of the continued existence of physical barriers to access."); *Colorado Cross-Disability Coal.*, 184 F.R.D. at 360 (where plaintiffs and class members had similar disabilities and challenged the legality of architectural barriers under the same statute, typicality was met).

Here, Plaintiff has demonstrated an injury caused by the Website with a nexus to Defendant's brick-and-mortar stores. She has alleged that her inability to use the Website made her unable to view the items for sale on the Website, and prevented Plaintiff from making purchases of goods sold at Defendant's physical locations. (Dkt. 1, ¶¶ 28, 29). This would be the same claim alleged by the Class Members. In each case, these claims would have arisen from the same course of events: the individual's inability to use the Defendant's Website with screen-reading software due to Defendant's failure to properly code the Website. The Named Plaintiff has the same disability as the Class Members and they challenge the same barriers that result from Defendant's coding practices. Moreover, each of the Class Members will make similar, if not identical, legal arguments to prove Defendant's liability. Typicality is met.

### 4. Plaintiff Can Show Adequacy

Plaintiff can fairly and adequately protect the interests of the Classes as required by FRCP 23(a)(4). The adequacy requirement is satisfied where, as here, the class representative: (1) has common, and not antagonistic, interests with unnamed class members; and (2) will vigorously prosecute the interests of the Class through qualified counsel. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Hanlon, supra,* 150 F.3d at 1021.

Here, Plaintiff's declaration demonstrates that she clearly understands her responsibilities as a class representative and has no conflicts. Morales Decl., ¶¶ 2,4.

16

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Plaintiff has actively participated in the case, including reviewing and signing her declaration and being available for consultation. Manoucheri Decl., ¶11. She has also prosecuted this matter diligently through her counsel. *Id*.

Plaintiff has also retained experienced counsel to represent her and the other Class Members. Manoucheri Decl., ¶¶2-6, 11. Wilshire Law Firm, PLC, has prosecuted hundreds of class actions in recent years, and is experienced in prosecuting discrimination cases under the ADA and the Unruh Act for access barriers presented by a website. Manoucheri Decl., ¶¶2-6. Wilshire Law Firm's attorneys on this case in particular are experienced in class action litigation, making them well-qualified and capable of prosecuting this action. *Id*. Adequacy is satisfied.

**5. Plaintiff Can Show That Class Certification Is Appropriate Under Rule 23(b)(3)**

### a. *Plaintiff Can Show Predominance*

To show predominance, the plaintiff must establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). To succeed, it is the elements of the ADA claim which are central to this inquiry.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

17

operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (internal alteration original).

Here, Class Members will have to individually prove that they are legally blind, but this presents a small hurdle to the class action in that it can be proven with a doctor's note. That Defendant is a private entity that owns, leases, or operates a place of public accommodation is of course a class wide issue which can be determined in one fell swoop as to all the Class Members. That plaintiffs were denied public accommodations by Defendant because of their disabilities, which is the central liability question, can also be proven by class wide evidence. That is because the Class Members each encountered an identical website, which has been evaluated by an expert to determine whether the website is compatible with screen-reading software or not. If the website does not work with screen-reading software, which is the case here, the Class Members will each prevail. Regardless of other factors involved with the Class Members' potential enjoyment of the Website and the goods offered therewith, such as the individual screen-reader employed, the type of web browser used, or the Class Members' experience and familiarity using screen-readers, the inability of the Website to work with screen-reading software would present an insurmountable barrier to the use of the Website and will be, therefore, actionable under the ADA. Regardless of the brand of screen-reader employed, if a website does not work with screen-reading software, it cannot be used by a blind person. And no matter how experienced with screen-readers a blind person is, if the screen-reading software cannot accurately read the information coded in the website, the website will not work. The existence of the barriers and the Website's interaction with screen-readers, the primary liability questions here, are class wide. An answer to these questions will determine "the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. Predominance is met.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

### b.  *Plaintiff Can Show Superiority*

Plaintiff also satisfies each of the four Rule 23(b)(3) superiority factors. The interest of each class member in individually controlling his/her own case. This factor weighs in favor of class certification here because the cost of many individual actions would be prohibitively high and the damages at issue are modest. *See, e.g., Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication."); *Amchem*, 521 U.S. at 617. Each Class Member's potential monetary recovery is relatively low, as they will receive, most likely one $4,000 penalty per individual. The extent and nature of other existing litigation. No case has been filed in this jurisdiction or any other, aside from this case, against Defendant under Title III of the ADA and the Unruh Act stemming from Defendant's Website's incompatibility with screen-reading software. This is the only case raising these claims against Defendant. Accordingly, this factor weighs in favor of certification. The desirability of concentrating the litigation in this forum. Given that Defendant is a corporation incorporated in California, Defendant operates two brick-and-mortar stores in this district, and Plaintiff is a California resident who resides in this district and attempted to access Defendant's Website in this district is desirable to concentrate the litigation in this forum. Moreover, because liability as to Plaintiff's state law Unruh Act claim is premised on Defendant's violation of the ADA, a federal claim, Cal. Civ. Code § 51(f), this Court, and not a state court, should adjudicate whether Defendant's Website complies with the ADA. Accordingly, it is desirable to concentrate the litigation in this forum. The trial will not pose any disabling manageability problems. The primary liability question here—does the Website work with screen-reading software—is class wide. The only individual issues are whether the individual Class Members are legally blind, which presents

WILSHIRE LAW FIRM, PLC<br>3055 Wilshire Blvd, 12th Floor<br>Los Angeles, CA 90010-1137

19

a very low evidentiary hurdle, and the number of times each Class Member visited the website. The last question, which can be established by affidavit, presents an additional evidentiary issue as to damages, but the Ninth Circuit is clear that individualized issues as to damages cannot defeat class certification. *Leyva*, 716 F.3d at 515 (district court "abused its discretion when it based its manageability concerns on the need to individually calculate damages"). Superiority is met.

**6.   Plaintiff Can Show That Class Certification Is Appropriate Under FRCP 23(b)(2) Regarding Injunctive Relief**

Because Plaintiff seeks injunctive relief, she moves alternatively under FRCP 23(b)(2) for an injunction-only class should the Court find that FRCP 23(b)(3) has not been met. FRCP 23(b)(2) permits class certification where the party against whom relief is sought "has acted or refused to act on grounds that apply generally to the class, so that injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360.

Here, Plaintiff seeks, on behalf of herself and all other members of the Classes, an injunction requiring Defendant to correct its website so that it is fully accessible. This injunctive relief, if granted, will apply generally to the Classes, and not to any specific member solely, as the Class Members have been and will continue to each be exposed to the same harmful and inadequate Website coding created by Defendant. The Class Members have all had the same experiences of difficulty, discomfort, embarrassment, distress, discouragement and frustration in violation of their civil rights and will be exposed to it again. Accordingly, the Website can be enjoined as to all of the Class Members or to none of them.

///

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## IV.   CONCLUSION

Respectfully, the Court should grant Plaintiff's motion and issue an order certifying the proposed classes.

Dated: July 19, 2022                    Respectfully Submitted,

**WILSHIRE LAW FIRM, PLC**

/s/ *Binyamin I. Manoucheri*
Binyamin I. Manoucheri
*Attorneys for Plaintiff and Proposed Class*

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137